UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KIM DAMES, DAVID ARMSTRONG, and MYRA DAVIS, individually and on behalf of all those similarly situated,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>MERCY HEALTH, and<br>MERCY HOSPITALS EAST COMMUNITIES,<br>d/b/a Mercy Hospital Washington,<br><br>　　　　Defendants. | Case No. 4:22-cv-1360 |

**Notice of Removal**

Defendants Mercy Health ("Mercy Health") and Mercy Hospitals East Communities ("MHEC") hereby remove this civil action from the Circuit Court of Franklin County, Missouri, to the United States District Court for the Eastern District of Missouri. As grounds for removing this civil action, Defendants state:

**A.　　Background**

1.　　On December 12, 2019, Plaintiff Kim Dames ("Dames") commenced this civil action against MHEC in the Circuit Court of Franklin County, Missouri, Case No. 19AB-CC00264.

2.　　In the original petition, Dames was the only plaintiff and MHEC was the only defendant.

3.　　The case stated by Dames' original petition was not removable as it contained no federal claim and there is no diversity jurisdiction.

4. On November 28, 2022, the state court granted Dames leave to file an amended petition, and Dames filed her amended petition on that same day.

5. In the amended petition, David Armstrong ("Armstrong") and Myra Davis ("Davis") joined in this civil action as new plaintiffs. Dames, Armstrong, and Davis are collectively referred to as "Plaintiffs."

6. In the amended petition, Mercy Health was joined as a new defendant. Mercy Health and MHEC are collectively referred to as "Defendants."

7. In the amended petition, Plaintiffs attempt to assert state law claims against Defendants for violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010 *et seq.* (Count I), for unjust enrichment (Count II), for money had and received (Count III), and for declaratory judgment and injunctive relief (Count IV).

8. Plaintiffs allege that they were involved in motor vehicle accidents and chose to obtain medical treatment at Mercy Hospital Washington, a hospital operated by MHEC, which is a subsidiary of Mercy Health. Am. Pet. ¶¶ 35-36, 53-54, 69-70.

9. Plaintiffs further allege that they were covered for their treatment under: (a) the medical payments coverage of their automobile insurance policies; and (b) their health insurance plans. Am. Pet. ¶¶ 38, 46, 56, 63, 72, 79.

10. Plaintiffs complain about Defendants' practices in billing and collecting from Plaintiffs' insurers for Plaintiffs' treatment.

11. Plaintiffs allege that:

   a. "If the patient is identified as one whose medical bills may be recoverable from another source and the total amount billed to that patient is less than Twenty Thousand Dollars ($20,000), Mercy either refuses to submit that

        patient's medical bills to his or her valid commercial health insurance or an employee health benefit plan ('health insurance'), or submits the bills to health insurance and sometime thereafter remits those funds back to health insurance after recovering payment from another source." Am. Pet. ¶ 3.

    b.    "Mercy engages in these practices even though it is contractually required to submit said bills to health insurance, accept payment from health insurance in satisfaction of the bill, not seek payments from any additional sources, and hold the patient harmless from any amounts owed other than co-pays or deductibles." Am. Pet. ¶ 4.

    c.    "Mercy seeks payment for medical bills through means including, among others, demanding cash payment directly from the patients, placing unlawful liens upon patients' third-party tort claims, and seeking medical payment benefits from the patients' auto insurers." Am. Pet. ¶ 6.

    d.    "Mercy pursues such courses of conduct despite knowing the patients have health insurance and being contractually entitled to have their medical bills submitted to their health insurance for payment." Am. Pet. ¶ 7.

    e.    "Mercy is precluded by its contracts with private health insurance from seeking payment for covered services from other sources, including from the patient directly; through medical payments coverage from the patients' automobile insurer; by turning the bills over to collections; or by filing a lien against patients' property, including personal injury claims." Am. Pet. ¶ 10.

12. Plaintiffs allege that "Mercy is required to honor a contractual discount with its patients' health insurance and accept discounted payment from health insurance in full satisfaction of the patients' debts." Am. Pet. ¶ 9.

13. This alleged "contractual discount" (the "Discount") arises under MHEC's provider agreements with Plaintiffs' health insurers (the "Provider Agreements") and is the difference between: (a) MHEC's billed charges for Plaintiffs' treatments; and (b) the rate negotiated between MHEC and Plaintiffs' health insurers as to the amount due under the Provider Agreements for Plaintiffs' treatments (the "Negotiated Rate").

14. Plaintiffs allege that under the terms of their *health insurance plans*, they have the following rights (the "Health Plan Rights"): (a) a right to have a Discount and a Negotiated Rate applied to MHEC's charges for their treatments; and (b) a right to have only their health insurance plans pay MHEC for their treatments, subject to any copays, coinsurance, or deductibles owed by Plaintiffs to MHEC under their health insurance plans. Plaintiffs allege:

- a. "Mercy's failure to follow its own contractual obligations has the unfair consequence of depriving patients, like Plaintiffs, of *the benefit of the bargain those patients made with **their health insurance***." Am. Pet. ¶ 15 (emphasis added).

- b. "Plaintiff Kim Dames was entitled to a contractual reduction in the amount of her medical bills charged by Mercy ***pursuant to her insurance agreement*** with Mercy [sic], and to have those bills paid by her health insurance." Am. Pet. ¶ 44 (emphasis added).

- c. "Plaintiff David Armstrong was entitled to a contractual reduction in the amount of his medical bills charged by Mercy ***pursuant to his insurance***

28129554.7

4

        *agreement with Home State Health Plan / AM Better Missouri*, and to have those bills paid by her [sic] health insurance." Am. Pet. ¶ 61 (emphasis added).

    d.    "Plaintiff Myra Davis was entitled to a contractual reduction in the amount of her medical bills charged by Mercy *pursuant to her insurance agreement with Health Systems, Inc.*, and to have those bills paid by her health insurance." Am. Pet. ¶ 77 (emphasis added).

15.    Plaintiffs concede that they are not entitled to these alleged Health Plan Rights under MHEC's Provider Agreements with Plaintiffs' health insurers because Plaintiffs are not third-party beneficiaries of the Provider Agreements: "The contract between Mercy and health insurance disavows that patients, like Plaintiffs, are third-party beneficiaries under the contract." Am. Pet. ¶ 15.

16.    Plaintiffs allege that Defendants improperly deprived them of their alleged Health Plan Rights by billing and collecting for Plaintiffs' treatments from their medical payments coverage instead of billing and collecting only from their health insurance plans. By doing so, Defendants allegedly improperly deprived Plaintiffs of all or part of their medical payments coverage, which, they contend, could have been used to pay for other medical expenses. Am. Pet. ¶¶ 67, 82.

17.    For example, MHEC's charges for Dames' treatment were $12,382.50. Am. Pet. ¶ 37. Dames contends that because of her alleged Health Plan Rights, she was entitled: (a) to have a Negotiated Rate of $576.00 and a Discount of $11,806.50 applied to MHEC's charges for her treatment; and (b) to have only her health insurance plan pay for her treatment, subject to any copay, coinsurance, or deductible owed by her under her health insurance plan. Am. Pet. ¶¶ 44,

47-49. Dames alleges that MHEC improperly billed and collected $5,000 from her medical payments coverage, thereby depriving her of her alleged Health Plan Rights and her medical payments coverage. Am. Pet. ¶ 50.

18.     This civil action is essentially a rehash of *Hoops v. Medical Reimbursements of America, Inc. and Mercy Hospitals East Communities*, United States District Court for the Eastern District of Missouri, Case No. 4:16-CV-01543-AGF, in which this Court (Judge Fleissig) granted summary judgment in favor of MHEC and the other defendant on nearly identical claims asserted by Plaintiffs in the present civil action. *See* 2018 WL 1138464 (E.D. Mo. Mar. 2, 2018); 2018 WL 6830099 (E.D. Mo. Dec. 28, 2018).

      **B.**      **ERISA completely preempts Davis's claims.**

19.     Davis's "health insurance"/"insurance agreement with Health Systems, Inc." (*see* Am. Pet. ¶¶ 15, 77) under which she claims her alleged Health Plan Rights is an employer-provided health plan that is regulated by ERISA.

20.     Davis alleges: "At the time of the medical services, Plaintiff Myra Davis had valid health insurance coverage with Health Systems, Inc." Am. Pet. ¶ 72.

21.     Davis further alleges: "Plaintiff Myra Davis was entitled to a contractual reduction in the amount of her medical bills charged by Mercy pursuant to her insurance agreement with Health Systems, Inc., and to have those bills paid by her health insurance." Am. Pet. ¶ 77.

22.     At the time of Davis's treatment, MHEC had a "Health Services Agreement" (i.e., a Provider Agreement) with Health Systems, Inc., that refers to Health Systems, Inc., as "Employer" and recites that "Employer maintains a self-insured employee health plan through

28129554.7

6

which Employer reimburses and arranges for the provision of Covered Services … to Beneficiaries … (the 'Plan')."

23. ERISA applies "to any employee benefit plan if it is established or maintained … by any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a).

24. Under ERISA, an "employee benefit plan" includes "an employee welfare benefit plan." 29 U.S.C. § 1002(3).

25. Under ERISA, Davis's health plan is an "employee welfare benefit plan" because it is established or maintained by her employer "for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits or benefits in the event of sickness, accident…." 29 U.S.C. § 1002(1).

26. In turn, Davis's health plan is an "employee benefit plan" that is regulated by ERISA. *Ibson v. United Healthcare Servs., Inc.*, 776 F.3d 941, 944-45 (8th Cir. 2014). This is so whether her health plan is self-funded by her employer or fully-insured under a health insurance policy purchased by her employer to provide health care benefits to its employees. *Robinson v. Linomaz*, 58 F.3d 365, 368 (8th Cir. 1995) ("[A]n employer's purchase of an insurance policy to provide health care benefits for its employees can constitute an Employee Welfare Benefit Plan for ERISA purposes.").

27. "When a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed. This is so because when the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.

ERISA is one of these statutes." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207–08 (2004) (quotations omitted).

28. "ERISA's comprehensive legislative scheme includes an integrated system of procedures for enforcement. This integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C. § 1132(a), is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans…. Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 208-09 (quotations and citations omitted).

29. "The pre-emptive force of ERISA § 502(a) is still stronger…. [T[he ERISA civil enforcement mechanism is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. Hence, causes of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court." *Id.* at 209-10 (quotations and citations omitted).

30. ERISA § 502(a)(1)(B) provides that "[a] civil action may be brought (1) by a participant or beneficiary … (B) *to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan*, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (emphasis added).

31. "This provision is relatively straightforward. If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits. A participant or beneficiary can also bring suit

generically to 'enforce his rights' under the plan, or to clarify any of his rights to future benefits. Any dispute over the precise terms of the plan is resolved by a court…." *Davila*, 542 U.S. at 210.

32. Davis is a participant or beneficiary of her ERISA-regulated health plan, and she seeks to recover benefits allegedly due to her under the alleged terms of her health plan and/or to enforce her rights under the alleged terms of her health plan, namely her alleged Health Plan Rights: (a) to have a Discount and a Negotiated Rate applied to Mercy's charges for her treatment; and (b) to have only her health plan pay for her treatment (subject to any copay, coinsurance, or deductible owed by her under her health plan).

33. Under ERISA § 502(a)(1)(B), Davis could bring a claim to recover benefits allegedly due to her under the alleged terms of her health plan (including her alleged Health Plan Rights) and/or to enforce her rights under the alleged terms of her health plan (including her alleged Health Plan Rights), and the parties' dispute over the precise terms of her health plan is resolved by a court. *Davila*, 542 U.S. at 210.

34. Moreover, ERISA § 502(a)(3) provides that "[a] civil action may be brought … (3) by a participant, beneficiary, or fiduciary (A) *to enjoin any act or practice which violates* any provision of this subchapter or *the terms of the plan*, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) *to enforce* any provisions of this subchapter or *the terms of the plan*." 29 U.S.C. § 1132(a)(3) (emphasis added).

35. Among other remedies, Davis seeks injunctive relief to enjoin Defendants' alleged practices, which, she contends, violate the alleged terms of her health plan (including her alleged Health Plan Rights), and to enforce the alleged terms of her health plan (including her alleged Health Plan Rights). Am. Pet. Count IV and Prayer for Relief.

28129554.7                                              9

36. As a participant or beneficiary of her ERISA-regulated health plan, Davis could bring a claim seeking such relief under ERISA § 502(a)(3).

37. In addition, Davis could bring a claim for relief under ERISA § 502(a)(3) because her claims essentially are a dispute as to the coordination of benefits provisions in her medical payments coverage and her health insurance plan. *See Dakotas & W. Minnesota Elec. Indus. Health & Welfare Fund by Stainbrook & Christian v. First Agency, Inc.*, 865 F.3d 1098, 1101-04 (8th Cir. 2017) (request for declaratory judgment enforcing plan's coordination of benefits provision was a claim for equitable relief under ERISA § 502(a)(3)).

38. "Section 502(a) preemption extends to § 502(a)(3)." *Lyons v. Philip Morris Inc.*, 225 F.3d 909, 912 (8th Cir. 2000) (citing *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 144–45 (1990).

39. ERISA §§ 502(a)(1)(B) and 502(a)(3) do not limit the universe of possible defendants. *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000) ("§ 502(a)(3) admits of no limit (aside from the "appropriate equitable relief" caveat, which we address *infra*) on the universe of possible defendants. Indeed, § 502(a)(3) makes no mention at all of which parties may be proper defendants—the focus, instead, is on redressing the act or practice which violates any provision of [ERISA Title I]." (quotation omitted)); *Dakotas*, 865 F.3d at 1101 ("The action may be brought against FA, a private insurer, because § 502(a)(3) does not limit the universe of possible defendants." (quotation omitted)); *Lyons*, 225 F.3d at 913 (ERISA § 502(a)(3) completely preempted state law claims by trustees of multi-employer health plans against tobacco companies to recover costs incurred in paying claims for tobacco-related illnesses); *Anthony v. Int'l Ass'n of Machinists & Aerospace Workers Dist. Lodge 1*, 296 F. Supp. 3d 92, 97–98 (D.D.C. 2017) ("Since neither provision of the statute expressly identifies a proper

defendant, the Court will not read a term into the statute that is not present."). Liability under ERISA § 502(a) "does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued." *Harris*, 530 U.S. at 245.

40.     MHEC is a proper defendant to any claims that Davis could assert under ERISA (whether directly under ERISA or as completely-preempted state-law claims) because: (a) MHEC is the party that has allegedly deprived her of her alleged Health Plan Rights and the benefits allegedly due under her health plan; and (b) any relief entered against MHEC would enforce her alleged Health Plan Rights and provide her with the benefits allegedly due under her health plan.

41.     In sum, Davis's state law claims are within the scope of the civil enforcement provisions of ERISA § 502(a)(1)(B) and/or ERISA § 502(a)(3). Thus, her state law claims are completely preempted by ERISA and converted into ERISA claims. *Davila*, 542 U.S. at 208-10; *Jenkins v. Moses H. Cone Mem'l Health Servs. Corp.*, No. 5:16-CV-00188-FL, 2016 WL 9406697, at *1 (E.D.N.C. Dec. 30, 2016) (ERISA completely preempted state law claims of plaintiff, who was involved in a motor vehicle accident, against hospital for alleged improper billing practices in pursuing lien against plaintiff's personal injury claim instead of billing and collecting only from plaintiff's health insurance plan).

**C.     Defendants are entitled to remove this civil action because the Court has federal question jurisdiction over Davis's claims, which are completely preempted by ERISA.**

42.     Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

43. Under 28 U.S.C. § 1331, this Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

44. This Court has original jurisdiction of this civil action under 28 U.S.C. § 1331 because Davis's state law claims are completed preempted by ERISA and converted into ERISA claims. "'Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" *Lyons*, 225 F.3d at 912 (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

45. Because this Court has original jurisdiction of this civil action, Defendants are entitled under 28 U.S.C. § 1441(a) to remove this civil action from the state court to this Court. *Davila*, 542 U.S. at 214 ("[R]espondents' state causes of action fall 'within the scope of' ERISA § 502(a)(1)(B), … and are therefore completely pre-empted by ERISA § 502 and removable to federal district court.").

**D.    The Court has supplemental jurisdiction over the remaining state law claims.**

46. When, as here, any one state law claim asserted in a case is within the scope of ERISA § 502(a), the entire case is removable to federal court. *Lyons*, 225 F.3d at 912 & n.2; *Fink v. Dakotacare*, 324 F.3d 685, 689 (8th Cir. 2003) ("When a complaint pleading only state law claims that are preempted by ERISA is removed to federal court, one or more of the claims must be "recharacterized" as an ERISA claim to establish federal jurisdiction."); 28 U.S.C. § 1441(c)(1).

47. Under 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over the state law claims of Dames and Armstrong (and any state law claims asserted by Davis that are not completely preempted by ERISA) because all of these state law claims are so related to the

28129554.7                                    12

federal law claims asserted by Davis under ERISA that these state law claims form part of the same case or controversy under Article III of the United States Constitution.

### E. Defendants' removal is timely.

48. The case first became removable on November 28, 2022, when the state court granted Dames leave to file the amended petition and Plaintiffs filed the amended petition, which contains Davis's claims that are completely preempted by ERISA. (Dames' claims in the original petition and in the amended petition are not completely preempted by ERISA because her health plan is not regulated by ERISA.)

49. Accordingly, Defendants' removal is timely under 28 U.S.C. § 1446(b)(3).

50. Alternatively, Mercy Health, a new defendant in this civil action, has yet to be served in this civil action. As a result, Defendants' removal is timely under 28 U.S.C. § 1446(b)(2).

### F. Attachments to Defendants' notice of removal.

51. Attached to this notice of removal is the complete file from the state court and a complete copy of the current state court docket sheet.

ACCORDINGLY, Defendants request that the Court take jurisdiction over this civil action and grant such other relief to which Defendants are entitled.

        Respectfully submitted,

        THOMPSON COBURN LLP

        By /s/ Jeffrey R. Fink
          Jeffrey R. Fink, #44963
          Thompson Coburn LLP
          One US Bank Plaza
          St. Louis, Missouri 63101-1611
          Telephone: 314.552.6000
          Facsimile: 314.552.7000
          jfink@thompsoncoburn.com

        Attorneys for Defendants
        Mercy Health and
        Mercy Hospitals East Communities

## Certificate of Service

The undersigned hereby certifies that on December 20, 2022, a true and correct copy of the foregoing was served on the following via electronic mail:

Bradford B. Lear, Esq.
Todd C. Werts, Esq.
Anthony J. Meyer, Esq.
Lear Werts LLP
103 Ripley Street
Columbia, MO  65201
573-875-1991
lear@learwerts.com
werts@learwerts.com
meyer@learwerts.com

Charles R. Wooten, Esq.
Roberts, Wooten & Zimmer, LLC
10438 Business 21
Hillsboro, MO  63050
636-797-2693
charleswooten@rwzlaw.com

Mark E. Brinkmann, Esq.
Robinson Brinkmann & Fulford LLC
24 S. Church St.
Union, MO  63084
636-583-7908
mark@attorneysrbf.com

        /s/ Jeffrey R. Fink

28129554.7        14