**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| KIM DAMES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | No. 4:22-cv-01360-SEP |
| ) | |
| MERCY HEALTH, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Before the Court are Plaintiffs' motion to remand, Doc. [14], and Defendants' motion for leave to fil a sur-reply, Doc. [18]. Both motions are fully briefed and ripe for disposition. For the reasons set forth below, both motions are granted.

**FACTS AND BACKGROUND[1]**

Plaintiffs are Missourians who got into car accidents and then sought treatment at Defendants' hospital emergency room. Doc. [3] ¶¶ 35-36, 53-54, 69-70. They all have a similar story: Plaintiffs arrived at the hospital, presented insurance cards, and received treatment. *Id.* ¶¶ 40, 58, 74. Plaintiffs also signed contracts ("Hospital Services Agreements") with Defendants that, among other things, provided:

> **Assignment of Insurance Benefits:** I assign to Mercy, my physician or other non-Mercy healthcare professional involved in my (or the patient's) care my (or the patient's) rights under all insurance and benefit plan documents, and authorize direct payment to each healthcare provider of all insurance and plan benefits payments for services provided to me (or the patient) by these providers. By paying my providers directly, my insurance company or employer is fulfilling its obligations to me (or the patient) under the insurance policy, or the employer is fulfilling its obligations as required by law. I also agree that I (or the patient) am financially responsible for charges not paid according to this assignment.

*Id.* ¶ 13. Plaintiffs allege that Defendants were required to submit the medical bills to their health insurance providers by the Hospital Services Agreements and by agreements between Defendants and insurance providers ("Provider Agreements"). *Id.* ¶ 4, 8. The Provider Agreements set the rates at which the insurance providers pay the hospital, and the rate is usually

---

[1] The facts are drawn from Plaintiffs' Amended Complaint, Doc. [5], and Defendants' Answer to Plaintiffs' Amended Complaint, Doc. [3].

1

lower than the rate paid by an uninsured patient or an out-of-network provider.  Plaintiffs allege that Defendants sought payment directly from Plaintiffs or from their auto insurance providers instead of honoring the Provider Agreements.  *Id.* ¶ 6.  That practice allowed Defendants to avoid receiving lower payments under the Provider Agreements and deprived Plaintiffs of the benefit of the bargain they were entitled to under their health insurance plans.  *Id.* ¶ 15.

Based on that alleged scheme, Plaintiffs brought individual and class claims in Missouri state court for violations of the Missouri Merchandising Practices Act (MMPA), Mo. Rev. Stat. § 407.020, unjust enrichment, money had and received, and declaratory and injunctive relief.  Doc. [5] ¶¶ 93-129.

On November 28, 2022, Plaintiffs filed the Amended Petition in state court.  *See* Doc. [5].  The Amended Petition added Plaintiff Myra Davis, whose health insurance plan is at the core of this removal dispute.  At the time of the medical treatment Davis had health insurance coverage through Health Systems, Inc.  Doc. [3] ¶ 72.  Her Health Systems insurance plan ("ERISA Plan") is regulated by the Employee Retirement Income Security Act (ERISA).  29 U.S.C. § 1001-461; *see also* Doc. [15] at 7.  After Davis joined the suit, Defendants removed the case to this Court on the grounds that ERISA preempted Plaintiffs' claims.  Doc. [1].  Plaintiffs move to remand the case to state court.  Doc. [14].

## LEGAL STANDARD

The party seeking removal and opposing remand "bear[s] the burden of establishing federal jurisdiction." *Noel v. Laclede Gas Co.*, 612 F. Supp. 2d 1051, 1055 (E.D. Mo. 2009) (citing *In re Bus. Men's Assurance Co.*, 992 F.2d 181, 183 (8th Cir. 1993)).  "All doubts about federal jurisdiction must be resolved in favor of remand." *Graham v. Hubbs Mach. & Mfg., Inc.*, 49 F. Supp. 3d 600, 605 (E.D. Mo. 2014) (citing *In re Bus. Men's Assurance Co.*, 992 F.2d at 183)).

## DISCUSSION

Plaintiffs argue that the case should be remanded because ERISA does not completely preempt their state law claims.  If Plaintiffs are correct, the Court lacks subject matter jurisdiction and must remand the case to state court.  Defendants respond that the removal was proper because ERISA completely preempts at least one of Plaintiff Davis's claims.  The Court agrees with Plaintiffs that remand is required.

I.  **ERISA completely preempts state law causes of action that could have been brought under ERISA and do not rest on an independent legal duty.**

Federal courts have jurisdiction over claims that raise federal questions, i.e., "actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Removal based on 'federal-question jurisdiction is governed by the "well-pleaded-complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). But there is an exception to that rule: "'[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be removed." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (alteration in original) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). "ERISA is one of these statutes." *Id.* at 208.

ERISA sets out eleven types of enforcement actions that an individual can bring. *See* 29 U.S.C. § 1132. Two are relevant to this case. Section 1132(a)(1)(B) provides:

> A civil action may be brought—(1) by a participant or beneficiary— . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

And § 1132(a)(3) empowers a

> participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

ERISA has "extraordinary pre-emptive power," *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987), but the presence of an ERISA-governed plan in a complaint does not automatically result in a right to remove. ERISA must completely preempt the state cause of action, which happens only if (1) "an individual, at some point in time, could have brought his claim under ERISA," and (2) "there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210; s*ee also Lyons v. Philip Morris Inc.*, 225 F.3d 909, 912 (8th Cir. 2000) ("Section [1132](a) preemption extends to § [1132](a)(3)."). If Defendants can establish both prongs, Plaintiffs' claims "fall[] 'within the scope' of ERISA." *Davila*, 542 U.S. at 210.

3

## II.   ERISA does not completely preempt Plaintiffs' claims.

Defendants bear the burden of establishing both prongs of the *Davila* test. Plaintiffs argue Defendants cannot satisfy either prong; Defendants argue they can prove both. The Court finds that the second prong—an independent legal duty—resolves the dispute in favor of remand.

### A. Plaintiffs' claims implicate Defendants' independent legal duties.

Defendants argue that Plaintiffs' "claims are not based on legal duties independent of ERISA because her claims are based, at least in part, on her alleged rights under her ERISA-regulated health plan to a 'contractual discount' and to have only her health plan for her treatment." Doc. [18-1] at 1. When evaluating Plaintiffs' claims, the Court "must examine [Plaintiffs'] complaints, the [state laws] on which their claims are based . . . , and the various plan documents." *Davila*, 542 U.S. at 211. Defendants point to several paragraphs in the Amended Complaint to show how Plaintiff Davis's claims are derived from her rights under her ERISA regulated plan:

> 9. Mercy is required to honor a contractual discount with its patients' health insurance and accept discounted payment from health insurance in full satisfaction of the patients' debts.

> 15. The contract between Mercy and health insurance disavows that patients, like Plaintiffs, are third-party beneficiaries under the contract. Accordingly, Mercy's failure to follow its own contractual obligations has the unfair consequence of depriving patients, like Plaintiffs, of the benefit of the bargain those patients made with their health insurance.

> 77. Plaintiff Myra Davis was entitled to a contractual reduction in the amount of her medical bills charged by Mercy pursuant to her insurance agreement with Health Systems, Inc., and to have those bills paid by her health insurance.

> 82. Through its medical payments billing program described above, Mercy took the entirety of Plaintiff Myra Davis's medical payments coverage, and Ms. Davis did not have that coverage to pay for other medical expenses.

Doc. [5] ¶¶ 9, 15, 77, 82. According to Defendants, those allegations show that Plaintiff Davis is claiming that Defendants deprived her of "benefits due to [her] under the terms of [her] plan" and that she is trying to "enforce[her] rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). But even assuming that Defendants are correct, and Plaintiffs could have brought these claims under ERISA, that does not satisfy the second prong of *Davila*. Defendants must also prove that the claims do not rest on an independent legal duty.

4

This suit involves three agreements: (1) the *Provider Agreements* between Defendants and the ERISA insurance provider; (2) The *Hospital Services Agreements* between Plaintiffs and Defendants; and (3) the *ERISA Plan* agreement between Plaintiff Davis and Health Systems, Inc. If all of Plaintiffs' claims can be sustained based on the Provider Agreements and the Hospital Service Agreements, then an "independent legal duty . . . is implicated by [Defendants'] actions," and Plaintiffs' claims are not completely preempted by ERISA. *Davila*, 542 U.S. at 210.

### 1. Count I: Violation of the Missouri Merchandising Practices Act

Plaintiffs allege Defendants' "billing practices and related misconduct . . . violated the Missouri Merchandising Practices Act by, among other things, constituting an unfair practice and breach of the duty of good faith as required under the Act." Doc. [5] ¶ 102. Whether Defendants violated the MMPA by an unfair practice or breach of duty of good faith does not depend on Plaintiff Davis's ERISA Plan. The statute imposes the duty, not the terms of an ERISA plan. A court may be required to look at the terms of the Hospital Services Agreement to determine if Defendants used "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement" of its medical services, but that evidence will not be found in the ERISA plan. Mo. Rev. Stat. § 407.020.

### 2. Counts II and III: Unjust Enrichment and Money Had and Received

The elements of Counts II and III are similar and can be analyzed together. In Missouri, "[u]njust enrichment requires a showing that: '(1) [the plaintiff] conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances.'" *Hargis v. JLB Corp.*, 357 S.W.3d 574, 586 (Mo. 2011) (alteration in original) (quoting *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010)). And the "elements of an action for money had and received are: (1) the defendant received or obtained possession of the plaintiff's money; (2) the defendant thereby appreciated a benefit; and (3) the defendant's acceptance and retention of the money was unjust." *Mo. State Emps.' Ret. Sys. v. Salva*, 504 S.W.3d 748, 751 (Mo. Ct. App. 2016) (quoting *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. Ct. App. 2014)).

None of the elements of either cause of action is dependent on the terms of Plaintiff Davis's ERISA plan. Plaintiffs allege that Defendants were unjustly enriched because "payment

5

for the services provided should have come from Plaintiffs' . . . health insurance, and the reasonable value for [Defendants'] services determined by the contracts between [Defendant] and health insurance." Doc. [5] ¶ 107.  As relevant to that claim, Defendant is alleged to have violated (1) a requirement of the Hospital Services Agreement to seek payment from Plaintiff Davis's health insurance, and (2) payment requirements set out in the Provider Agreements.  The ERISA plan might end up being relevant to help calculate damages, e.g., if it is necessary to determine what Plaintiff Davis would have been charged *if Defendants kept the other two agreements*.  As discussed in more detail below, that is not enough for ERISA to completely preempt Plaintiffs' state law claims, where the legal duties allegedly violated are found in the Hospital Service Agreements and Provider Agreements.

### 3. Count IV:  *Declaratory and Injunctive Relief*

In their claim for equitable relief, Plaintiffs claim that Defendants "failed to honor [their] contractual agreed discount regarding Plaintiffs' medical bills at issue in this case" and "failed to honor its contractual commitment to submit the medical bills of insured patients to their insurance companies." Doc. [5] ¶ 122-23.  Plaintiffs also allege that Defendants are precluded by their "contracts with private health insurance" and their "own contracts with Plaintiffs" from seeking payment for medical charges from sources other than the health insurance provider.  *Id.* ¶¶ 124-25.  Plaintiffs seek a declaratory judgment that Defendants "violated the terms of [the] agreements with the various health insurance providers" and a permanent injunction enjoining Defendants from "unlawful billing practices." *Id.* ¶¶ 128-29.  The contracts mentioned in Count IV are the Hospital Service Agreements between Plaintiffs and Defendants and the Provider Agreements between Defendants and the insurance providers.  Count IV does not implicate the terms of the ERISA plan.

**B. Defendants' counterarguments for removal are unpersuasive.**

Defendants take a different view of Davis's claims.  They argue that the claims are "directly premised on her alleged rights under her ERISA-regulated health plan to a 'contractual discount' and to have only her health plan pay for her treatment." Doc. [18] at 7.  Defendants seem to be referencing allegations in Plaintiffs' Amended Complaint, which state that Defendants are "required to honor a contractual discount with [their] patients' health insurance and accept discounted payment from health insurance in full satisfaction of the patients' debts." Doc. [5] ¶ 9; *see also id*. ¶¶ 18, 73, 88, 121-22.  The Court does not take those allegations to refer

6

to the ERISA plan.  Rather, Plaintiffs appear to be referring to the Provider Agreements, which Plaintiffs allege require Defendants to pay their insurance providers a lower rate.  ERISA allows a beneficiary to bring an action "to recover benefits due to him *under the terms* of his plan," or "to enforce his rights *under the terms* of the plan," or "to enjoin any act or practice which violates any provision of this subchapter or *the terms* of the plan." 29 U.S.C. § 1132(a)(1)(B)-(a)(3).  Defendants ignore the law's emphasis on the *terms* of the ERISA plan.  Plaintiffs' alleged contractual discount depends on the terms of the Provider Agreement, not the terms of the ERISA plan.

      Defendants rely on *Salzer v. SSM Health Care of Oklahoma Inc.*, 762 F.3d 1130 (10th Cir. 2014), which arose from facts nearly identical to the facts of this case.  Salzer sought treatment from a defendant hospital after an accident, had issues with the billing procedures, and then brought state law claims against the hospital.  *Id.* at 1133.  He filed claims for "breach of contract, violation of the Oklahoma Consumer Protection Act, deceit, specific performance, and punitive damages" as well as "tortious interference with contract." *Id.* at 1135.  The Tenth Circuit concluded "that five of Salzer's six original claims do not fall under ERISA § 502(a)(1)(B) because they do not seek to vindicate rights set forth in the 'terms of the plan,' as required by that provision." *Id.*  For all but the tortious interference claims, the Tenth Circuit found that Salzer:

> [did] not assert claims for benefits under his [ERISA] Plan, nor does he seek to enforce or clarify rights under the [ERISA] Plan.  Instead, he complains that [the defendant] did not fulfill its obligation to submit charges for his care to the insurer, but instead billed him directly.  The contracts under which these claims arise are the Provider Agreement and the Hospital Services Agreement, not the [ERISA] Plan.

*Id.*  The Tenth Circuit found complete preemption only on the tortious interference claim, which alleged "that '[a]ccording to each class member's contract for health insurance, each class member should have received a discount for the medical services provided by Defendant,' and that [the defendant's] failure to bill the insurance companies 'deprived each class member of the benefit of their health insurance.'" *Id*. at 1137 (quoting record).  The court explained that the tortious interference claim "depends entirely upon the existence of a benefit contained in an ERISA plan" and could "succeed only if his ERISA plan actually entitled him to a discount for the services provided by [the defendant]." *Id.* 1137-38.

7

*Salzer* is distinguishable because Plaintiffs did not bring a tortious interference claim. That claim had no independent legal basis because, unlike the other five claims, it arose under the ERISA plan, not the Provider Agreement and Hospital Services agreement. The contract being interfered with *was* the ERISA insurance plan. The Tenth Circuit's conclusion about the five un-preempted claims in *Salzer* also applies here:

> [Plaintiffs have] alleged that [Defendants] breached [their] contractual duties under the Provider Agreement and the Hospital Services Agreement by billing [them] directly for services, and that in doing so the company also violated state statutory and tort law. [Defendants have] not shown that [those] claims seek to enforce rights that exist under the terms of the [ERISA] Plan.

*Id.* at 1137.

Defendants protest that Plaintiff Davis's ERISA plan is the *only* source of her claim to an alleged discount because the Provider Agreement "expressly confirms that Davis is not a third-party beneficiary." Doc. [15] at 6. The Tenth Circuit's reasoning in *Salzer* undermines that argument as well. "[T]he merit of [Plaintiff's] claims that [she] is a third-party beneficiary of the Provider Agreement is not properly part of our jurisdictional analysis as to the removal question. The possibility that [Plaintiff] fails to make out a winning state law claim does not indicate that complete preemption applies." *Salzer*, 762 F.3d at 1136. Plaintiffs third-party beneficiary theory may prove to be meritless, but it still establishes an independent legal duty for the claim. Defendants argue that Plaintiff Davis's ERISA plan will need to be consulted to determine whether the ERISA plan is the primary or secondary plan for payments coverage. Defendants cite *Dakotas & Western Minnesota Electrical Industry Health & Welfare Fund by Stainbrook & Christian v. First Agency, Inc.*, for the proposition that a primary coverage determination completely preempts a state law claim. 865 F.3d 1098, 1101 (8th Cir. 2017). In *Dakotas* an injured college baseball player filed claims with two insurance policies, one regulated by ERISA and one not. *Id.* at 1100. Both insurance companies refused to pay, and one of the insurers brought a claim under ERISA seeking a declaratory judgment on which insurance coverage was primary. *Id.* Dakotas is inapposite. The plaintiff brought the claim directly under ERISA and sought declaratory judgment to enforce the term of an ERISA plan. The Eighth Circuit considered ERISA's preemptive power only to demonstrate that, had the claim been brought in state court, it likely would have been preempted. *Id.* at 1104. But even in that passing reference, the court noted "a declaratory judgment action by an ERISA plan in state court is very likely

preempted (though that issue is not definitively resolved)." *Id.* (citing *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Am. Int'l Grp., Inc.*, 840 F.3d 448 (7th Cir. 2016)).

If *Dakotas* does not "definitely resolve[]" that a claim brought *by an ERISA plan* about denial of benefits *under the terms of an ERISA plan* is preempted, it certainly does not determine the preemption question in this case, in which ERISA's involvement is far more remote. *Dakotas* is further distinguishable because the primary/secondary payer distinction in *Dakotas* was at the heart of the dispute. The plaintiff brough the suit under ERISA to declare who was the primary payer under the terms of the plan. Here, none of Plaintiffs' claims were originally under ERISA, and all of Plaintiffs' claims implicate independent legal duties under the MMPA, Hospital Service Agreement, or Provider Agreement.

None of the foregoing implies that Plaintiff Davis's ERISA-regulated plan is irrelevant. Circuit courts, including the Eighth Circuit, have repeatedly held that mere relevance is not sufficient for preemption. *See K.B. ex rel. Qassis v. Methodist Healthcare-Memphis Hosps.*, 929 F.3d 795, 803 (6th Cir. 2019) ("[A] mere need to look at an ERISA plan is not enough to trigger complete ERISA preemption."); *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 615 (6th Cir. 2013) (the need to look at an ERISA plan to measure damages was "beside the point for purposes of *Davila*'s second prong"); *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 532 (5th Cir. 2009) ("*Davila* also does not support the proposition that mere reference to or consultation of an ERISA plan in order to determine a rate of pay is sufficient for preemption."); *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 598 (7th Cir. 2008) ("[R]eferences in the complaint . . . for the purpose of identifying a damages amount . . . do not convert the claims into ones for plan benefits."); *In Home Health, Inc. v. Prudential Ins. Co. of Am.*, 101 F.3d 600, 604 (8th Cir. 1996) ("The mere mention of an ERISA plan in a complaint is not, in and of itself, sufficient to warrant a finding that the state law relates to a plan."). The "case law does not set up an automatic triggering mechanism whereby the simple presence of an ERISA plan on the balance sheet brings down the hammer of complete federal preemption every time." *K.B.*, 929 F.3d at 803.

The other precedents Defendants use to support their argument are also unpersuasive. Defendants claim that this case "is essentially a rehash of *Hoops v. Medical Reimbursements of America, Inc. and Mercy Hospitals East Communities*." Doc. [1] at 6 (citing 2018 WL 1138464, at *13 (E.D. Mo. Mar. 2, 2018), *order vacated in part by* 2018 WL 6830099 (E.D. Mo. Dec. 28,

9

2018)).  The defendants in *Hoops* removed the case to federal court under the Class Action Fairness Act of 2005, so the court's jurisdiction was not in question.  *Hoops*, 2018 WL 6830099, at *4.  And while the defendants argued that ERISA preempted the claims brought under Missouri's Group Coordination of Benefits regulation, Mo. Code Regs. Ann. tit. 20, § 400-2.030, the court did "not reach the question of whether the regulation is preempted by ERISA."  *Hoops* 2018 WL 1138464 at *13 n.15.

In *Lyons v. Philip Morris Inc.*, the Eighth Circuit affirmed the removal of twenty-five ERISA trustees against defendant tobacco companies.  225 F.3d 909, 911 (8th Cir. 2000). Defendant argues that "[i]f tobacco companies can be proper defendants to a [§ 1132(a)(3)] claim, then [Defendants] can surely can be a proper defendant to a § 502(a)(3) claim by Davis." Doc. [15] at 14.  The Court does not disagree.  But just because Defendants could be proper ERISA defendants, does not mean that they are.  Plaintiffs have not brought any claims under ERISA, and the state law claims they did bring are not completely preempted.

## CONCLUSION

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute."  *Hensley v. Forest Pharms., Inc.*, 21 F. Supp. 3d 1030, 1033 (E.D. Mo. 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)).  Recognizing that "[a]ll doubts about federal jurisdiction must be resolved in favor of remand," *Graham*, 49 F. Supp. 3d at 605, because Defendants have "not proven the need for federal jurisdiction," *K.B.*, 929 F.3d at 802, the Court grants Plaintiffs' motion for remand.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand, Doc. [14], is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to for Leave to File a Sur-Reply in Opposition to Plaintiffs' Motion for Remand, Doc. [18], is **GRANTED**.

A memorandum of dismissal will be issued separately.

Dated this 30th day of September, 2023.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE